## SIMS *vs.* THE STATE OF GEORGIA.

1. Where a ground of error alleged in the motion for a new trial was that the testimony of a named witness was admitted to impeach one of movant's witnesses, without stating which one—it appearing that the same witness was used for the purpose of impeaching several witnesses of the movant, this court will not grant a new trial on.that ground.

2. Where a witness introduced to impeach another stated that he had known the general character of the latter the year previous, that it was bad, and from it he would not believe such witness on oath; but that he did not know the general character of the impeached witness during the current year, nor that there had been any change in.the public estimation, but from his private knowledge of the witness he believed there had lately been reformation in him, such answers were competent to go to the jury under proper instructions of the court.

(*a.*) The charge not being set out, will be presumed to be right.

Criminal Law.   Evidence.   Practice in Supreme Court. Before Judge HARRIS.   Coweta Superior Court.   September Term, 1881.

Isham Sims was indicted for simple larceny, and on the trial was convicted.   He moved for a new trial, on the following among other grounds :

(1.) Because the verdict was contrary to the law and the evidence.

(2.) Because the court erred in permitting one Pinson, a witness for the state, called to impeach a witness for the defence, to give his statement as to what the character of said witness had been in the community in which he lived. Witness said he knew what public opinion was last year, and the court permitted witness to say that he did not know whether the public opinion had changed, and that he would not believe said witness for the defence on his oath; said Pinson stating at the same time that the witness had reformed, in his opinion, and from what he personally knew of said witness now he would believe him on oath, counsel for the defence objecting to the impeaching testimony unless witness would swear that he then knew the general character of said witness.

[The ruling excepted to in this ground of the motion was based upon the following questions and answers during the examination of Pinson : Q. Do you know Mose Sims? A. Yes, sir ; I know Mose. Q. Do you know his general character? Is his character good or bad? A. It has been heretofore very bad. Q. Is it bad now? A. As far as this year is concerned, I know nothing against Mose. Q. What is his character? A. I will have to say that it is bad yet, for I don't know that it is good. As I say, I have not known any thing against Mose Sims this year. Q. From that character would you believe him on his oath? A. I would not believe Mose. Q. Do you know his general character now? A. Yes, sir; I think I do. (The court instructed the witness to answer directly whether he knew the general character of Mose.) I do not know hardly how to answer that question. I have known Mose all of his life from a boy. Q. What is his repution? A. He has the reputation of being a notorious gambler, and I would not believe any gambler. Q. The question is do you know his character —what other people say about it—how he stands? A. I

don't think I would believe him.   Q. The question is do you know by what estimate he is held by the community —by the people ?   A. Well, sir, I do not know whether I could say that I would impeach Mose's testimony or not. I know a good deal against Mose ; but he has been a right good boy for the last year or two.   I reckon may be I I could believe Mose.   I might do it.   (Counsel here instructed the witness as to the meaning of general character, and then asked what people thought about Mose in the neighborhood in which he lived, either now or in the last four or five years.)   A. Well, sir, as I said before, heretofore I would not believe Mose on his oath.   Q. I want to know if you know what his general character was in the neighborhood last year, and the year before, and the year before that?   A. It was bad, sir. Q. Do you know that that general character, as the people regarded him, has ever been changed—what the people think of him ?   A. Mr. Brewster, I could not answer that question.   Q. The point I am after is, do you know that the people have changed about it ?   A. No, sir, I do not know.   Q. Now, Mr. Pinson, from your knowledge of his general character, is it good or bad ?   A. Well, sir, I would say it is bad.   I will explain it.   Mose Sims has been for the last three or four years a kind of loose negro over the country, that went sorter from pillar to post. He never would stay at one place long.   His general character heretofore has been that of a gambler, for he admitted to me once that this Lewis Sims won his hat and boots; but I think there has been a reformation in Mose Sims, and he has been for the last year considerably changed ; but I think that as far as what the people generally believe, his character is bad yet, but from my own belief, he has changed a little.   Q. From the general character would you believe him on oath?   A. That is a mighty hard question to answer.   Q. I speak now as if you had no knowledge of him in the world yourself.   A. In that case, I would not.

On cross-examination the witness stated that from his personal knowledge of Mose Sims he believed the latter had reformed a little this year, and his character was better. The following colloquy also took place on cross-examination: Q. I understood you to testify that Mose Sims character was bad. A. No sir; I didn't say it was bad. I said heretofore it had been bad. Q. Are you acquainted with the general character of Mose Sims; are you now acquainted with it? A. No, sir; I am not. I have only my individual opinion about it as to his general character. What other people think about it, I could say it was bad, and I don't know that people have ever changed about it. I have changed on Mose Sims, mind.]

The motion was overruled, and the defendant excepted.

P. F. SMITH, by HARRISON & PEEPLES, for plaintiff in error.

H. M. REID, solicitor general, for the state.

JACKSON, Chief Justice.

1. The defendant was tried and convicted of simple larceny. The theft charged is cattle stealing. If the witnesses for the state were believed by the jury the evidence is sufficient to support the verdict. Their credibility is for the jury. There was no error, therefore, in overruling the motion for a new trial on the ground that the verdict is contrary to the evidence and without evidence to support it.

2. Nor do we see that the court erred in admitting the impeaching testimony of the witness, Pinson. In the motion for a new trial, the objection is to his testimony as to one witness, but that one is not named, and several were impeached by Pinson. But even if the ground was clearly made, and the witness of the defendant alluded to be that one, or those even in respect to whose character the impeaching testimony is weakest, it ought to have

gone to the jury. Where the witness answers, it is a hard question, and to the effect that he might believe him but hardly would, the testimony should be weighed by them. It is general character that is the foundation, and if that has been bad but is a little better for a year, and the witnesss knows it from what it is generally among the people, whether a gambling or other illegal and immoral character, the witness may say whether or not he would believe him, and how much or to what extent he would credit him, and all he says may go to the jury and be weighed by them.

The charge of the court is not in the record, but it is not excepted to, and by presumption is right. Therefore, in regard to impeachment, the law was given correctly in charge, and, therefore, the jury were told what was necessary to be proved in order to impeach a witness, and under a proper charge defendant could not have been hurt.

It is enough, however, to say in this case and on this point, that the motion for a new trial does not specify which witness impeached by Pinson is alluded to, and the point cannot therefore be specifically ruled. On a general view of all of it, we fail to see such error, if indeed any at all, as would authorize us to grant a new trial.

The other grounds for a new trial were abandoned here. Judgment affirmed.